*STATE EX REL. SPALLER V. PAINESVILLE ET AL.

1. A POLICEMAN IS AN "OFFICER" UNDER THE LAWS OF OHIO.
   A duly appointed patrolman of the police department of a city
   is an officer within the meaning of the laws of Ohio.

2. SALARY OF POLICEMAN CANNOT BE INCREASED OR DIMINISHED.
   Under Sec. 126 Mun. Code (Gen. Code 4213) a city council has no
   power to increase or diminish the salary of a police officer
   appointed under the civil service provision of such code,
   during the term for which he was appointed, which is during
   good behavior.

MANDAMUS.

*Harry E. Hammer* and *Homer Harper*, for plaintiff.
*J. B. Burrows*, for defendants.

FILLIUS, J.

This is a proceeding in mandamus brought upon the relation of Mr. Spaller against the city of Painesville, the city auditor and city treasurer to compel the auditor to issue and deliver a warrant and voucher to the relator in his favor for the amount which he claims due him for salary as policeman and to compel the treasurer to pay such warrant.

The facts set forth in the petition and relied upon to secure the writ are briefly as follows:

The relator states that the city, by an ordinance duly enacted in July, 1903, fixed the salary of a patrolman of the police department of the city at $720 per year, and that this ordinance remained in full force and effect thence until December 18, 1907; that on October 12, 1903, the relator was duly appointed a patrolman of the police department of the city for and during the period of good behavior under and in pursuance of the rules of the civil service and laws of the state of Ohio governing police departments of municipali-

---

*Affirmed, no op., (*State ex rel.*) *Spallen* v. *Moody*, 85 O. S. 000;
57 Bull. 39.

ties, and that he qualified and entered upon the discharge of his duties, at the salary above named.

That thereafter and on December 18, 1907, while the relator was holding and performing the duties of his office, the council of the city of Painesville passed an ordinance increasing his salary and pay from $720 to $840 per year.

That he continued in his office of patrolman under his original appointment, and that on January 12, 1910, the defendant city, by its council passed an ordinance assuming to reduce his salary from $840 as fixed by the ordinance of 1907 to $720 per annum, being the amount at which his salary was fixed when he entered the service of the city as patrolman.

That since the enactment of the last named ordinance, the city has refused to pay him the difference between $720 per annum and $840 per annum; and that there is now due and payable to him from the city the sum of $90, and that the city wrongfully refuses to pay him, and that there is money in the police fund of said city which can be properly and lawfully appropriated to the payment of his claim, and he prays that a writ of mandamus be issued commanding the city through its proper officers to issue a voucher to him for the sum of $90, and commanding the proper officer of the defendant, to wit, its treasurer, to pay the same.

To this petition the city by its city solicitor has filed a general demurrer.

We understand this to be an amicable proceeding to test the question whether the city had, first, the right to raise this patrolman's salary from $720 to $840, by the ordinance of December, 1907, and second, whether having thus raised it, it might lawfully reduce his salary from $840 down to $720, what it originally was, as it undertook to do by the ordinance of January 12, 1910.

Copies of the ordinances relating to this controversy are attached to the petition.

Ordinance No. 519, passed in July, 1903, seems never to have been expressly repealed, for in the succeeding ordinance No. 703 passed in December, 1907, there is no repealing clause,

and if the former ordinance is repealed it is only so by implication.

But ordinance No. 793 passed January, 1910, expressly repeals ordinance No. 703 passed December 18, 1907, and all other ordinances inconsistent therewith are repealed.

The demurrer to the petition raises the question whether the city council of Painesville was authorized to pass the ordinance of December, 1907, thereby increasing the pay of the relator as one of the patrolmen of the city from $720 a year to $840 a year.

Whether the city council had the power to pass that ordinance must depend upon whether it was forbidden by statute to increase or diminish the salary of a patrolman of the city from what it was when he entered upon the discharge of his duties in 1903.

This raises the question of the proper construction to be given to Sec. 126 Mun. Code, which is the section in force at the time the relator became an employe of the city and so far as it is important in this connection is as follows:

"The council shall fix the salaries of all officers, clerks and employees in the city government, and, except as otherwise provided in this act, all fees pertaining to any office shall be paid into the city treasury. The salary of any officer, clerk or employee so fixed shall not be increased or diminished during the term for which he may have been elected or appointed."

In construing Sec. 126 (Gen. Code 4213) it is well to bear in mind Sec. 227 (Gen. Code 4214), which provides as follows:

"Council shall by ordinance or resolution, except as otherwise provided in this act, determine the number of officers, clerks and employees in any department of the city government, and shall fix by ordinance or resolution their respective salaries and compensation and the amount of bond to be given for each officer, clerk or employee in any department of the city government, if any be required."

It appears from the foregoing provisions of the code that it was the duty of the council not only to fix the number of officers, clerks and employes in any department of the city

Lake County.

government but also to fix by ordinance or resolution their respective salaries.

The above provisions of the Mun. Code of 1902 marked a departure from what the law had previously been in that they expressly prohibited the city council of any municipality from increasing or diminishing the salary of any officer, clerk or employe of the city whose salary had been fixed, during the term for which he was appointed.

The code of 1902 made a new departure in another respect. It provided for a merit system and divided the civil service of a city into a classified and an unclassified service. The police department and the persons employed therein were in the classified service and appointments thereto must be made according to the merit system as defined and provided for in the code, and when a person was once appointed to any office in any department under the classified service, he cannot be removed, reduced in rank or discharged, except for some cause relating to his moral character or his suitableness to perform the duties of his position, though he may be suspended from duty for a period not exceeding thirty days pending the investigation of charges against him.

The legal effect of these provisions is, we think, that when the relator was appointed to the office of patrolman in 1903, he was appointed to serve in that capacity during good behavior, within the terms of the statute providing for his removal.

The purpose which the legislature had in mind in adopting the merit system and in making appointments to the police force during good behavior is well stated in the case of *State* v. *Baldwin,* 77 Ohio St. 532 [83 N. E. Rep. 907]. The court in that case speaking by Summers, J., says, page 551: "The evident purpose of the legislature respecting the police and fire departments, as indicated by the provisions relating to them in the new municipal code, was to adopt a civil service or merit system. The chief of police is made the executive head of the department under the direction of the mayor. He is given the exclusive right to suspend any of the deputies, officers or employes under his management or control, and in case of suspension, he is required to certify such fact, together with the

### State v. Painesville.

cause of such suspension, to the mayor, who then finally determines the matter, excepting that an appeal may be taken to the board of public safety in case the judgment of the mayor is one of removal. The mayor is given the exclusive right to suspend the chief of the police department, and in the event he suspends the chief it is his duty to certify such fact, together with the cause of suspension, to the board of public safety and it is given final jurisdiction. And it is made the duty of the mayor to prefer charges with council against any director of public safety for incompetency, neglect of duty, malfeasance in office, habitual drunkenness, or gross immorality, and it is made the duty of council to inquire into the charges, in the manner provided for the removal of other officers of the municipality. Evidently it was thought that it would be conducive to the discipline or efficiency of the department, respecting the members of the police force, if the exclusive power of suspension should be vested in the chief of police, and if the mayor should not have original jurisdiction to remove members of the force, but only in the event of charges being certified to him by the chief. If the chief fails in his duty the exclusive power of suspending him is vested in the mayor, and he may suspend him and certify the fact to the board, so that the board of public safety does not deal directly with the members of the force or with the chief of the police, but exercises its control through the mayor, and the mayor does not deal directly or immediately with the members of the force but with the chief of police, and the chief is given immediate control of the men. This method seems to have been evolved from experience. But the wisdom of it, or effectiveness of it, is not a matter for our consideration. We have only to determine what the legislature in its wisdom has prescribed."

And it seems to us that it was directly in line with this policy that the legislature enacted Sec. 126 providing that the salary of any officer, clerk or employe fixed by it shall not be increased or diminished during the term for which he may have been elected or appointed.

The object and purpose of it evidently was that the officers, clerks and employes included within its terms should be independent of the whim of the council or the influence of pub-

Lake County.

lic officials to the end that they might without fear of loss of pay or loss of office, perform the duties devolving upon them. And, upon the other hand, that city councils should likewise be free from the importunities and harassments of office holders, appointees and employes for increased compensation.

Perhaps with the wisdom or policy of the statute we have nothing to do, except as it may aid us in arriving at a true interpretation of its meaning.

Taking the two sections, 126 and 227, together, the first question suggested is whether a patrolman is an officer and whether he is included within the provisions of Sec. 126. The terms of the statute are very inclusive, and it would seem that they were intended to include everybody employed in the city government; and that meaning would seem to be borne out very strongly by the terms of Sec. 227, which provides that the council shall determine the number of officers, clerks and employes in any department of the city government and shall fix by ordinance or resolution their respective salaries.

If, indeed, a patrolman be not an officer, then it would seem that he certainly would come within the meaning of the other term, an "employe."

It seems to us quite clear, however, that he is an officer, and so it has repeatedly been held. See 6 Words and Phrases 4945.

In our own statutes a policeman is repeatedly referred to as an officer. For instance, in Gen. Code 5251, it is provided that the commanding officer of any regiment, batallion, company or troop may authorize in writing any constable or *police officer* of the city, village or township to arrest any delinquent member of the regiment. Again, in Gen. Code 5276 it is provided that any person who engaged in disposing of spirituous or other intoxicating liquors near an encampment of soldiers may be put under guard by the commanding officer who may turn such person over to any *police officer* of the village or township. Again, Gen. Code 13478 provides that when a sheriff, constable, *police officer* or any agent for any duly incorporated society for the prevention of cruelty to animals has reason to believe, etc., he may cause a person to be arrested, and in Gen. Code 13474 it is provided that when a sheriff, constable, marshal or other *police*

*officer* has reason to believe that any person is about to engage in a prize fight, he shall arrest such person.

Thus it seems that a patrolman or policeman is generally recognized in our statutes as an officer and is referred to as such.

He is employed in one of the most important departments of the city government. He is the guardian of the peace of the city. He has important powers conferred upon him. He may arrest any citizen for an offense committed in his presence without warrant. And it seems to us that he properly comes within the designation of the term "officer." But, if not, it would seem that he certainly comes within the designation of the term "employe."

But the increasing or diminishing of the salary of an officer or employe is limited to the term for which he is appointed, and it is suggested that a patrolman is not appointed for any term. If this be so, it would seem that he might be discharged at any time without violation of any statute and his place filled by another appointee. But in view, of the fact that a patrolman once appointed serves until he is removed for cause, it necessarily follows that he is appointed for a term, to wit, for that period of time during which he is permitted to hold his office.

*People* v. *LeFevre*, 21 Colo. 218 [40 Pac. Rep. 882]. In this case the relator is permitted to hold until he becomes unfit to discharge the duties of his office, and he can only be removed when such unfitness is determined by the proper officers in the manner provided by the statute. In effect, it seems to us, this gives him a term of office during his fitness therefor, and if that continues so long as he lives, it gives him a term of office for life.

Having reached this conclusion, it necessarily follows that the relator's salary being fixed by ordinance at the time he entered into his office and upon the discharge of the duties thereof, the city council was without authority by ordinance or otherwise to increase or diminish that salary during the time he occupies the office, unless subsequent legislation has changed the effect of Sec. 126.

Lake County.

It is however suggested that the legislature in 1908 in enacting Sec. 166 (Gen. Code 4487) has by implication at least, repealed the provisions of Sec. 126 with respect to increasing or diminishing the salaries of an officer or employe.

Section 166 provides as follows: ''No officer, secretary, clerk, sergeant, patrolman, fireman or other employee, serving in the police or fire departments of any city of the state, at the time this act goes into effect, shall be removed or reduced in rank or pay, except in accordance with the provisions of Sec. 152 of this act.'' Gen. Code 4379, 4381.

As we view and construe this section, it seems to us clear that instead of effecting a repeal by implication or otherwise, of the provisions of Sec. 126, it is in entire harmony with the provisions of that section.

It will be noted that Sec. 166 says nothing whatever about increasing the pay of an officer, nor nothing about reducing his pay, except in accordance with the provisions of Sec. 152 of this act. Now Sec. 152 relates entirely to the method of procedure in case of removal of officers and employes in the police and fire departments for incompetency, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given by the proper authority, or for any other reasonable or just cause; and in such case the officer may be suspended by the proper officer and upon the charges against him being sustained, removed; and it was evidently the purpose of Sec. 166 to provide that the pay of an officer might be reduced by and under proceedings had by favor of Sec. 152. In other words, a policeman might be suspended and during his suspension his pay might be reduced or entirely taken away, and if permanently discharged his pay might be entirely cut off.

Thus considered, these two sections of the statute are in entire harmony, and both conduce to exactly the same end; namely, the good of the service and to protect the officers of these two departments against unwarranted interference with their salaries by way of reducing them, and upon the other hand, to take away from such officers the temptation to be constantly using their influence and office to secure increased emoluments.

Thompson v. Bank.

We therefore conclude that the effect of these statutory provisions is to take away from the city council of the city of Painesville the right to increase or diminish the salary of the relator, and that when it undertook to increase his salary by passing the ordinance of December, 1907, it undertook to do that which it was denied the power to do by express enactment and the ordinance was therefore so far void; and that so far as the ordinance of January, 1910, is concerned it may be regarded as valid because it does not in any manner affect the salary which the relator was entitled to receive under the ordinance of 1903.

For these reasons, the demurrer to the amended petition is sustained, and it being understood that the relator does not wish to plead over, it is the order of the court that the petition be and it is hereby dismissed, at relator's costs.

**Metcalfe, J.,** concurs.

_____

## BILLS AND NOTES—CONFLICT OF LAWS—CON= TRACTS—EVIDENCE—PLEADINGS.

[Lucas (6th) Circuit Court, March 13, 1909.]

Wildman and Kinkade, JJ.

(Parker, J., not sitting.)